**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| **TAMI COLTS,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**CITY OF ROME; OFFICER NICK HARRELL, as a City of Rome Police and individually; JOSH GLOVER, as a City of Rome Police and individually; OFFICER AMATS, as a K-9 of City of Rome and individually; JOHN DOE (1-3), and JANE DOES (1-3), Officers Unknown to the Plaintiff at this time,**<br><br>     **Defendants.** | **CIVIL ACTION FILE**<br><br>**NO. 4:21-CV-0027-MHC** |

**<u>ORDER</u>**

This case comes before the Court on: (1) Defendant City of Rome, Georgia (the "City")'s Motion to Dismiss Plaintiff's Complaint for Damages ("City's Mot. to Dismiss") [Doc. 4]; (2) the City's Motion to Dismiss Plaintiff's Complaint for Damages as Brought Against Defendant Officer Amats ("K-9 Mot. to Dismiss") [Doc. 5]; (3) Defendant Josh Glover ("Glover")'s Motion to Dismiss Plaintiff's Complaint for Damages ("Glover's Mot. to Dismiss") [Doc. 6]; and (4) Defendant

Officer Nick Harrell ("Harrell")'s Motion to Dismiss Plaintiff's Complaint for

Damages ("Harrell's Mot. to Dismiss") [Doc. 7].

I.   BACKGROUND[1]

   A.   Factual Background

On October 1, 2020, Plaintiff Tami Colts ("Colts") was driving her vehicle

when Glover,[2] a police officer, pulled her over for having windows tinted in

violation of the "tint percentage"[3] permitted in Georgia.  Compl. for Damages

("Compl.") [Doc. 1-1 at 2-13] ¶¶ 6-8, 25.  Glover noticed that there was a

passenger in Colts's car and began asking the passenger questions.  Id. ¶¶ 9-10.

Glover then ordered both the passenger and Colts out of her car.  Id. ¶ 11.  Glover

---

[1] Because this case is before the Court on a motion to dismiss, the facts here are presented as alleged in the Complaint.  See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

[2] While referred to as "the officers" in the factual allegations section of the Complaint, see Compl. ¶¶ 8, 14, Colts names the initial police officer at the scene as Glover, id. ¶ 25, and the police officer handling a police dog, Defendant Officer Amats ("K-9 Amats"), as Harrell, id. ¶ 29.  Where applicable, the Court will refer to both police officers as the "Officers."

[3] Although Colts refers to the "tent percentage" in her Complaint at Paragraph 8. this obviously is a typographical error.

took the passenger to his patrol vehicle and placed him under arrest while Colts waited outside her car.  Id. ¶¶ 12-13.

Meanwhile, Harrell, also a police officer at the scene, went to his patrol car, retrieved K-9 Amats from the car, and began circling Colts's car.  Id. ¶¶ 14, 28.  In one of the turns around the car, K-9 Amats leapt at Colts and bit her, after which Harrell pulled the dog off of Colts.  Id. ¶¶ 16-17.  An officer asked Colts if she was alright, but she said she was not because of the dog's bite.  Id. ¶¶ 18-19.  An EMT was called to treat Colts and take her to the hospital, but Colts refused to go with the EMT "because she believed that if she left her car there with the officers, they would plant drugs in her car."  Id. ¶ 19.  She drove herself home to get her husband, and then she was driven to the hospital.  Id. ¶ 20.  Colts was treated at the hospital and released.  Id. ¶ 21.

### B.      Procedural Background

Colts filed her Complaint on January 2, 2021, in the Superior Court of Floyd County, Georgia, asserting in the first paragraph that the Complaint is a "civil rights action pursuant to 42 U.S.C. § 1983."  Id. ¶ 1.  Colts names the following Defendants in the caption of her Complaint: the City, the Officers in their individual and official capacities, K-9 Amats in its individual and official capacities, and John Does (1-3) and Jane Does (1-3) in their individual and official

capacities.  Id.  As for Colts's causes of action, she asserts (1) false arrest under

O.C.G.A. § 51-7-1 against Glover (Count I); (2) false imprisonment under

O.C.G.A. § 16-5-41 against the Officers (Count II); (3) personal injury against K-9

Amats (Count III); (4) negligent infliction of emotional distress against all

Defendants (Count IV); and (5) deliberate indifference against the City, as the

owner of K-9 Amats (Count V).  Id. ¶¶ 25-39.  The City and the Officers removed

the case to this Court on February 5, 2021, based upon Colts invocation of 42

U.S.C. § 1983.  Notice of Removal [Doc. 1].  On the same day, Defendants filed

the four separate motions to dismiss now before the Court.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief."  Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed

for failure to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has explained this

standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant
> is liable for the misconduct alleged.  The plausibility standard is not

akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader.  Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011).  However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations.  Iqbal, 556 U.S. at 678.  Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

5

## III.   DISCUSSION

As an initial matter, although Colts classifies her complaint as a civil rights action pursuant to 42 U.S.C. § 1983, the first four of the five counts in the complaint assert claims solely arising under Georgia law.[4]  Compl. ¶¶ 25-33.  The only claim that arguably asserts a federal cause of action is contained in Count V, which alleges that the failure of the City to train and/or supervise Harrell in his handling of K-9 Amats was part of a policy or custom that deprived Colts of her federal constitutional rights.[5]  Id. ¶ 38.

---

[4] Counts I and II invoke Georgia state statutes.  Compl. ¶¶ 25-26.  Count III raises a personal injury claim against K-9 Amats, id. ¶ 27, but, to the extent it purports to raise a § 1983 claim against a police dog, it is dismissed as discussed below. Count IV, a claim asserting negligent infliction of emotional distress, alleges that Harrell was "negligent in carrying out the duties" and his "negligent conduct was outrageous" and "caused [her] severe pain and distress."  Compl. ¶¶ 28-33.  A claim for negligent conduct has been found to be "insufficient to establish a constitutional violation cognizable under 42 U.S.C. § 1983."  Johnson v. Lowe, No. 3:06-CV-67 CAR, 2006 WL 2711549, at *2 (M.D. Ga. Sept. 21, 2006); Cannon v. Taylor, 782 F.2d 947, 950 (11th Cir. 1986) (injuries caused by officer's negligence or gross negligence not actionable under § 1983).

[5] Count V does not specifically indicate that it is brought pursuant to § 1983, or name the particular constitutional violations underlying the claim; Colts states only that her "federal constitutional rights" were deprived.  Compl. ¶ 38.  Defendants do not address this deficiency.  However, the parties' continued reference to "deliberate indifference" suggests that they have contemplated and had the opportunity to respond to arguments regarding the City's liability under § 1983. See City's Br. in Supp. of its Mot. to Dismiss Pl.'s Compl. for Damages ("City's Br.") [Doc. 4-1] at 10-11 (setting out the elements of deliberate indifference,

**A.     Purported Section 1983 Claim Against Defendant K-9 Amats**

In Count III, Colts brings a claim for personal injury against K-9 Amats.

Compl. ¶ 27.  The City argues that K-9 Amats should be dismissed as a party in

this case because a dog is not a proper party in a § 1983 action.  City's Br. in Supp.

of its Mot. to Dismiss Pl.'s Compl. for Damages as Brought Against Officer Amats

[Doc. 5-1] at 3-4.  In response, without citation to any law or precedent, Colts

asserts that the dog is considered an officer under Georgia law.  Pl.'s Resp. at 26.

Colts's position is without merit.

The City cites to a Seventh Circuit Court of Appeals case, Dye v. Wargo, in

which the court directly rejected the notion that a dog could be sued under 42

_____

including that such a claim requires a showing of "[a] pattern of similar
constitutional violations by untrained employees," and then contending that, while
Colts's only allegation to support the claim is that she was bitten by K-9 Amats,
"the fact that a police dog may have bitten her does not even allow the inference of
a plausible claim for deliberate indifference"); Pl.'s Consolidated Resp. to All
Defs.' 12b Motions to Dismiss ("Pl.'s Resp.") [Doc. 14] at 16-17 (contending,
without citing to her Complaint or providing additional factual allegations, that
Colts "Has Alleged Sufficient Facts to Establish Liability Against the Defendants
Under Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658
(1978)," and that she should be allowed to discover additional facts regarding the
apparent "undocumented policy."); City's Reply Br. in Supp. of its Mot. to
Dismiss Pl.'s Compl. for Damages ("City's Reply") [Doc. 16] at 4 (contending that
"the Complaint does not allege any facts to support a pattern of prior constitutional
violations that would put the City on notice of a need to address a potential
problem.").

U.S.C. § 1983.  253 F.3d 296 (7th Cir. 2001) ("As for [the dog]: § 1983 applies

only to a 'person' who acts under color of state law.").  While the United States

Court of Appeals for the Eleventh Circuit has not made the same assertion

explicitly, its position and the position of other district courts in this circuit, appear

to be aligned.  See Jones v. Fransen, 857 F.3d 843, 857 n.9 (11th Cir. 2017)

(relying on Dye and noting that the dog would also not be a proper party if the

complaint were read to assert a § 1983 claim); Montanez v. City of Orlando, 678 F.

App'x 905, 912 n.3 (11th Cir. 2017) ("a dog is not a 'person' within the meaning

of § 1983"); Scott v. Brown, No. 1:11-CV-1811-TWT-JFK, 2012 WL 529983, at

*2 (N.D. Ga. Jan. 26, 2012), R.&R. adopted, 2012 WL 527476 (N.D. Ga. Feb. 16,

2012) (citing Dye) ("The K-9 must be dismissed as he or she is not a person

subject to suit under § 1983."); Grate v. Diefenbacher, No. 10-62379-HUCK, 2011

WL 996273, at *3 (S.D. Fla. Feb. 14, 2011), R & R adopted, 2011 WL 971736

(S.D. Fla. Mar. 17, 2011) ("A dog is not a person for purposes of a § 1983

claim.").  Thus, to the extent that Colts asserts a § 1983 claim against K-9 Amats in

Count III, that claim is **DISMISSED**.[6]

---

[6] Because this Court declines to entertain supplemental jurisdiction over the state
claims brought by Colts, it offers no opinion as to whether state law would permit
a personal injury claim against a police dog.

**B.      Claims Brought Against John and Jane Does**

Colts names John Does 1-3 and Jane Does 1-3 in the caption of her

Complaint.  See Compl.  The City argues that any claims brought against the John

and Jane Does should be dismissed for fictitious party pleading.  City's Br. at 9.

This Court agrees, only to the extent that the Complaint can be read to assert a

federal claim against any of the John and Jane Does.  "As a general matter,

fictitious-party pleading is not permitted in federal court."  Richardson v. Johnson,

598 F.3d 734, 738 (11th Cir. 2010).  The Eleventh Circuit has created a "limited

exception" to permit the use of fictitious names in place of real parties "when use

of a 'John Doe' label is, 'at the very worst, surplusage' because the plaintiff's

description of the defendant is "sufficiently clear to allow service of process.'"

Vielma v. Gruler, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting Dean v. Barber,

951 F.2d 1210, 1215-16 & n.6 (11th Cir. 1992)).

Colts has not offered any description of the fictitious John and Jane Does,

other than saying that "other officers began to show up" at the scene when she was

pulled over.  Compl. ¶ 12.  Moreover, there are no allegations in the Complaint that

relate the John and Jane Doe officers to any claims under § 1983.  Colts admits in

her response that the "John Doe element . . . sits in place in case other actors are

discovered in the course of discovery."  Pl.'s Resp. at 11.  "These bare descriptions

and conclusory allegations 'do not equate to the real possibility that these unknown individuals' identities will be revealed' during discovery, and the Court will not enable a fishing expedition on account of [Colts's] use of placeholders." Gibbons v. McBride, 124 F. Supp. 3d 1342, 1358 (S.D. Ga. 2015) (alterations accepted) (quoting Fitzpatrick v. Ga. Dep't of Corr., No. CV612-022, 2012 WL 5207474, at *8 (S.D. Ga. Aug. 21, 2015)).  Colts does not otherwise defend her inclusion of the John and Jane Does with any information that would be clear enough to allow service of process.  Thus, Colts has engaged in precisely the type of fictitious party pleading that is not permitted in this circuit.  To the extent that Colts asserts any § 1983 claims against John Does 1-3 and Jane Does 1-3, those claims are **DISMISSED**.

### C.    Section 1983 Claim Against the City

The only claim apparently intended to be brought under § 1983 is Count V, which Colts brings against the City, as the owner of K-9 Amats.  She alleges that the City's failure to train, supervise, and control K-9 Amats, as well as its failure to train and supervise Harrell in his handling of K-9 Amats, was deliberately indifferent conduct that led to the deprivation of her "federal constitutional rights." Compl. ¶¶ 35-38.  She alleges that the City "facilitated or acquiesced in or condoned or ratified the aforesaid misconduct," and that it was "part of an official

10

policy, custom, practice or pattern of conduct of the City of Rome." Id. ¶¶ 37-38.

In light of Colts's initial invocation of 42 U.S.C. § 1983, id. ¶ 1, the Court

considers Count V to be a federal, § 1983 claim against the City.

"It is well established that [42 U.S.C. §] 1983 itself creates no substantive

rights; it merely provides a remedy for deprivations of federal rights established

elsewhere." Wideman v. Shallowford Cmty. Hosp., Inc., 826 F.2d 1030, 1032

(11th Cir. 1987) (citing City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985)).  To

sustain a cause of action based on § 1983, a litigant must establish two elements:

(1) that he suffered a deprivation of a right, privilege, or immunity protected by the

U.S. Constitution or federal law, and (2) that the act or omission causing the

deprivation was committed by a person acting under color of state law.  Livadas v.

Bradshaw, 512 U.S. 107, 132 (1994); Arrington v. Cobb Cnty., 139 F.3d 865, 872

(11th Cir. 1998).  "[S]ection 1983 imposes liability only 'for violations of rights

protected by the Constitution, not for violations of duties of care arising out of tort

law.'"  Wideman, 826 F.2d at 1032 (quoting Baker v. McCollan, 443 U.S. 137,

146 (1979)).  Accordingly, "[i]n any § 1983 action, a court must determine

'whether the Plaintiff has been deprived of a right secured by the Constitution and

laws of the United States.'"  Glenn v. Brumby, 663 F.3d 1312, 1315 (11th Cir.

2011) (quoting Baker, 443 U.S. at 146).  "Absent the existence of an underlying

constitutional right, no section 1983 claim will lie."  Wideman, 826 F.2d at 1032.

A plaintiff seeking to hold a local government such as the City liable under

§ 1983 must show that the "execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the [alleged] injury . . . ."  Monell, 436 U.S.

at 694; see also Denno ex rel. Denno v. School Bd. of Volusia Cnty., 218 F.3d

1267, 1276 (11th Cir. 2000) (citing Monell, 436 U.S. at 694).  Because a county is

"liable under section 1983 only for acts for which the [county] is actually

responsible," Marsh v. Butler Cnty., 268 F.3d 1014, 1027 (11th Cir. 2001) (en

banc), Plaintiff "must identify a municipal policy or custom that caused . . .

injury."  Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (citation

and internal punctuation omitted).

> To establish a policy or custom, it is generally necessary to show a
> persistent and wide-spread practice.  Moreover, actual or constructive
> knowledge of such customs must be attributed to the governing body
> of the municipality.  Normally random acts or isolated incidents are
> insufficient to establish a custom or policy.

Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986).  A plaintiff

must show that the county's custom or practice is "the moving force behind the

12

constitutional violation." City of Canton v. Harris, 489 U.S. 378, 389 (1989)

(internal punctuation and citation omitted).

A plaintiff "has two methods by which to establish a county's policy:

identify either (1) an officially promulgated county policy or (2) an unofficial

custom or practice of the county shown through the repeated acts of a final

policymaker for the county." Grech, 335 F.3d at 1329 (citing Monell, 436 U.S.

at 690-91); see also Mandel v. Doe, 888 F.2d 783, 793 (11th Cir. 1989) ("Under

this theory of municipal liability, the first step of the inquiry is to identify those

individuals whose decisions represent the official policy of the local governmental

unit."). To prove § 1983 liability based on custom, a plaintiff must establish a

widespread practice that, although not authorized by written law or express

municipal policy, is so permanent and well-settled as to constitute a custom or

usage with the force of law. St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). In

other words, a longstanding and widespread practice is deemed authorized by the

policymaking officials because they must have known about it but failed to stop it.

Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479 (11th Cir. 1991).

The Court finds that, viewing the allegations in the Complaint in a light most

favorable to Colts, she has failed to allege facts that would support an inference of

§ 1983 liability on behalf of the City. Colts's primary allegation is that the City

caused her injuries through its "failure to train, and/or supervise" Harrell and K-9

Amats.  Compl. ¶¶ 35-36.  There are limited circumstances in which an allegation

of failure to train can be a basis for § 1983 liability.  City of Canton, 489 U.S.

at 378.  To establish Monell liability based on this theory, a plaintiff must show a

government body's failure to train its employees in a relevant respect is tantamount

to "deliberate indifference to the rights of persons with whom the [untrained

employees] will interact."  Id. at 388.  "Deliberate indifference" sets a high

standard of fault, requiring proof that a government actor disregarded a known,

obvious consequence of his action.  To show a "deliberate or conscious choice"

tantamount to "deliberate indifference," a plaintiff must present evidence that the

government body knew of a need to train and/or supervise in a particular practice

yet made a deliberate choice not to take any action.  Gold v. City of Miami, 151

F.3d 1346, 1350 (11th Cir. 1998).  To impute such knowledge for the purpose of a

failure to train claim, a plaintiff must show a pattern of similar constitutional

violations by untrained employees that demonstrates a defendant's deliberate

indifference.  Connick v. Thompson, 563 U.S. 51, 62 (2011).  The inquiry thus

turns on whether the governmental body knew or should have known of the risk of

constitutional violations but did not act.

The Supreme Court has explained the standard for applying § 1983 liability to municipalities based on inadequate training programs:

> We spoke [in <u>City of Canton</u>], however, of a deficient training "program," necessarily intended to apply over time to multiple employees.  Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case.  If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for.  Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability.

<u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown</u>, 520 U.S. 397, 407-08

(1997) (citations omitted) (quoting <u>City of Canton</u>, 489 U.S. at 387, 390, n.10).

Colts fails to allege the existence of a program or policy that permitted any

constitutional violations here.  Colts's statement in the Complaint that the alleged

conduct was "part of an official policy, custom, practice or pattern of conduct of

the City of Rome," is a legal conclusion and does not identify any policy instituted

by the City, formally promulgated or otherwise.  Nor does Colts allege any other

incident related to the City's alleged failure to train police dogs or their supervisors

aside from her own.

Moreover, Colts has failed to allege a <u>Monell</u> claim based on custom.  To do

so, "[a] pattern of similar constitutional violations . . . is ordinarily necessary,

15

because a single violation is not so pervasive as to amount to a custom." Gurrera

v. Palm Beach Cnty. Sheriff's Office, 657 F. App'x 886, 892-93 (11th Cir. 2016)

(citing Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011) and Grech, 335

F.3d at 1330); see also Depew, 787 F.2d at 1499 ("Normally random acts or

isolated incidents are insufficient to establish a custom or policy."); Brooks v.

Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) ("[T]he number of complaints bears

no relation to their validity."). Only a thoroughly engrained pattern of

unconstitutional violations satisfies this standard. The allegations in the

Complaint, or lack thereof, do not meet this standard.

Consequently, the City's Motion to Dismiss as to Colts's federal claim

against the City is **GRANTED**, and Count V is **DISMISSED**.

### D.    State Law Claims

The Court has dismissed Colts's only potential federal claims. None of

Colts's remaining claims provide a basis for this Court's exercise of original

jurisdiction. Therefore, the Court must determine whether it should exercise

supplemental jurisdiction over her remaining state law claims.

> [I]n any civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental jurisdiction over
> all other claims that are so related to claims in the action within such
> original jurisdiction that they form part of the same case or controversy
> under Article III of the United States Constitution.

16

28 U.S.C. § 1367(a).  However, a district court may decline to exercise

supplemental jurisdiction over a state law claim if the district court has dismissed

all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); see also

Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (citing 28 U.S.C.

§ 1367(a), (c)) ("With respect to supplemental jurisdiction in particular, a federal

court has subject-matter jurisdiction over specified state-law claims, which it may

(or may not) choose to exercise.  A district court's decision whether to exercise

that jurisdiction after dismissing every claim over which it had original jurisdiction

is purely discretionary.").  In determining whether to exercise supplemental

jurisdiction over pendent state law claims under § 1367(c), a court should consider

"such factors [as] judicial economy, convenience, fairness to the parties, and

whether all the claims would be expected to be tried together."  See Palmer v.

Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994) (citing United

Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966)).

In cases where an action originated in state court and was later removed to

federal court, and federal claims subsequently are dismissed, a federal court has the

discretion to remand the case to the state court.  Carnegie-Mellon Univ. v. Cohill,

484 U.S. 343, 351 (1988).  The Eleventh Circuit Court of Appeals has noted that

"if the federal claims are dismissed prior to trial, <u>Gibbs</u> strongly encourages or even requires dismissal of state claims." <u>L.A. Draper & Son v. Wheelabrator-Frye, Inc.</u>, 735 F.2d 414, 428 (11th Cir. 1984) (citing <u>Gibbs</u>, 383 U.S. at 726); <u>see also</u> <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1353 (11th Cir. 1997) (quoting <u>Carnegie-Mellon Univ.</u>, 484 U.S. at 350 n.7) ("When federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

Given that resolution of this case depends entirely on issues of state law and that this lawsuit is in its preliminary stage—it was filed four months ago and the applicable statutes of limitation have not run—the Court declines to exercise supplemental jurisdiction.

Accordingly, Colts's state law claims are **REMANDED** to the Superior Court of Floyd County, Georgia.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the City's Motion to Dismiss Plaintiff's Complaint for Damages [Doc. 4] and the City's Motion to Dismiss Plaintiff's Complaint for Damages as Brought Against Defendant Officer Amats [Doc. 5] are **GRANTED IN PART** to the extent that they seek to dismiss

federal claims brought under 42 U.S.C. § 1983 against the City, K-9 Amats, and

John Does 1-3 and Jane Does 1-3. Accordingly, Count V and any other claims

brought pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**. As

to remaining state law claims against the City, K-9 Amats, and John Does 1-3 and

Jane Does 1-3, the motions are **DENIED WITHOUT PREJUDICE**.

It is further **ORDERED** that Glover's Motion to Dismiss Plaintiff's

Complaint for Damages [Doc. 6], and Harrell's Motion to Dismiss Plaintiff's

Complaint for Damages [Doc. 7] are likewise **DENIED WITHOUT**

**PREJUDICE**.

Finally, it is further **ORDERED** that Plaintiff's remaining claims, which are

all brought pursuant to state law, are **REMANDED** to the Superior Court of Floyd

County, Georgia.

**IT IS SO ORDERED** this 9th day of June, 2021.

_____
MARK H. COHEN
United States District Judge